**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**William Perry SANDERS,**
**Defendant–Appellant.**

**No. 99–6530.**

United States Court of Appeals,
Sixth Circuit.

March 20, 2001.

Before MERRITT, NELSON, and SUHRHIENRICH; Circuit Judges.

PER CURIAM.

Defendant William Perry Sanders appeals following his conditional guilty plea to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1); and to possessing an unregistered firearm, in violation of 26 U.S.C. §§ 5861(d) and 5871. We AFFIRM.

## I.

The facts in this case are undisputed. On January 15, 1998, Officer Tommy Bunch of the McMinn County Sheriff's Department submitted an application for a search warrant to Tennessee State Court Judge Carroll Ross. The pre-printed affidavit states that on January 15, 1998, an "informant/cooperating citizen" advised the affiant that within the last twenty-four hours he:

> [X] 1) saw the above-described ... controlled substances ... stored therein;
>
> [X] 2) saw the above-described ... controlled substances ... in the hands of and on the person of *Perry Sanders* ...
>
> [X] 4) saw the above-described ... controlled substances ... being sold from the above-described property/vehicle/premises.

(J.A. 110.) The affidavit also states that Affiant further states that said informant him advised him as follows: That Perry Sanders possesses a quantity of crack cocaine. The informant did observe Perry Sanders selling the crack cocaine to other individuals. This confidential informant has given this officer information in the past, that has led to two drug arrest[s] and convictions.

(J.A. 110.)

Officer Bunch, the affiant, also indicated on the boilerplate form that he had known the informant for six years, and that said informant was "reliable, honest and credible," that said informant had given reliable information in the past, and that the informant had personal knowledge of the information given. (J.A. 109.)

At the suppression hearing, the AUSA[1] indicated that the state court judge also received the law enforcement credentials of the affiant, who had previously provided information to the judge; that the affiant advised the issuing state judge that twenty-five additional state search warrants had been issued by the same state judge based on information provided by the same confidential informant; and that the affiant had previously arrested the defendant at the same location for which subject search warrant was issued.

The search warrant was executed on January 15, 1998, at Sanders' home. The officers seized two firearms, a rifle and a sawed-off shotgun, which are the subjects of the indictment. During the course of the search Sanders also purportedly admitted to ownership of the firearms. He also executed a handwritten confession:

> On 01–15–98 the items found in my home or where I stay is [sic] mine. The one shotgun, the SKS rifle, the drug parapherna [sic], and any suspected drugs are mine. I admit this without threat or promise.

Following the search of his home and arrest, Sanders was released from state custody. On May 21, 1998, he met with Special Agent Robert E. Clowers of the Bureau of Alcohol, Tobacco and Firearms. At that time, Sanders was read his rights

---

1. The AUSA stated that Tommy Bunch was listed on Government Exhibit Number 1, and that he would state three additional items, as detailed above.

and again admitted ownership of the two firearms.

On February 23, 1999, Sanders was charged with being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1); and possessing an unregistered firearm (a sawed-off shotgun), in violation of 26 U.S.C. §§ 5861(d) and 5871. The third count of the indictment provided for the forfeiture of said firearms and ammunition under 18 U.S.C. § 3665.

On March 17, 1999, Sanders filed a motion to suppress the evidence obtained by the state search warrant, and his confessions. The matter was referred to a magistrate judge. After a suppression hearing, the magistrate judge recommended that Sanders' motion be denied. The district court adopted the recommendation, holding that the affidavit was sufficient to establish probable cause.

Sanders then pleaded guilty to the firearms counts, preserving his right to appeal the denial of the suppression motion. He also agreed to the forfeiture.

On October 8, 1999, Sanders was sentenced to concurrent period of seventy months incarceration and three years supervised release and to a total special assessment of $200. Sanders timely appeals.

## II.

Sanders contends that the affidavit supporting the search warrant did not establish probable cause. He also argues that any reasonable police officer would have noted the deficiencies, and that the *Leon* good faith exception does not apply. *See United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). Thus, Sanders claims that the fruits of the search should have been suppressed.

■ Probable cause determinations are generally reviewed under a de novo standard. *Ornelas v. United States,* 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). Fact findings are reviewed for clear error. *United States v. Williams,* 224 F.3d 530, 532 (6th Cir.2000).

■ In reviewing the sufficiency of an affidavit underlying a search warrant, we use the "totality of the circumstances" approach articulated in *Illinois v. Gates,* 462 U.S. 213, 230–31, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). *See United States v. Allen,* 211 F.3d 970, 972–73 (6th Cir.) (en banc), *cert. denied,* 121 U.S. 251, 7 S.Ct. 906, 30 L.Ed. 915 (2000). We accord "great deference" to the issuing judge's decision. *See id.* at 973. As long as the judge had a "substantial basis for … conclud[ing] that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more." *Id.* (internal quotation omitted); *see also Gates,* 462 U.S. at 238, 103 S.Ct. 2317 (holding that the test for probable cause is whether "there is a fair probability that contraband or evidence of a crime will be found in a particular place"). If a Fourth Amendment violation is found, both direct evidence and evidence considered fruit of the poisonous tree is inadmissible. *See United States v. Murphy,* 241 F.3d 447, 457 (6th Cir.2001).

Sanders argues that the affidavit in this case, similar to those criticized in *United States v. Weaver,* 99 F.3d 1372 (6th Cir. 1996); and *United States v. Allen,* 168 F.3d 293 (6th Cir.1999); *vacated and reh'g granted,* 179 F.3d 1002 (1999), was prepared on a preprinted, boilerplate form. He also contends that it fails to supply certain important details such as where the crack cocaine was sold from within the premises; what the house and the surrounding neighborhood looked like; whether the police corroborated the informant's information; and a description of

the drug transactions or the amount of drugs observed. Thus, it was unclear if the sale was a one-time occurrence or an on-going business. Finally, Sanders faults the affidavit's conclusion that the confidential informant was actually familiar with the appearance of crack cocaine.

*Allen*, issued by this Court after the lower court's ruling and the parties' briefs, disposes of Sanders' arguments. *Allen* ruled that "an affidavit based upon personal observation of criminal activity by a confidential informant who has been named to the magistrate and who, as the affidavit avers, has provided reliable information to the police in the past about criminal activity, though without further specificity as to the type of such activity, can be sufficient for a magistrate to find probable cause to issue a warrant." *Id.* at 971.

 As Sanders concedes in his brief, the affidavit states that the confidential informant, within twenty-four hours, had been "on/in" Sanders' premises, and that while on the premises he observed crack cocaine. Furthermore, Bunch averred that he had known the informant for six years, and that he was reliable, honest, and credible. The affidavit states that the confidential informant had given Officer Bunch information in the past that has led to two drug arrests and convictions. Furthermore, the issuing judge must have had familiarity with the confidential informant because he had issued search warrants in the past on the basis of this informant's information. The affidavit also indicates that the confidential informant had recently observed a particular crime—trafficking crack cocaine. Thus, under *Allen*, the affidavit was sufficient to support the magistrate's finding of probable cause. *See id.* at 976 ("We hold that where a known person, named to the magistrate, to whose reliability an officer attests with some de-

tail, states that he has seen a particular crime and particular evidence, in the recent past, a neutral and detached magistrate may believe that evidence of a crime will be found."); *see also Murphy*, 241 F.3d at 457–458, (finding affidavit sufficient to support probable cause for warrant to issue where it stated that the confidential informant had previously given reliable information, purchased crack cocaine from the defendant, and that prior to the transaction, agents saw the defendant leave the motel after speaking on the phone to the informant, and then return to the motel after the transaction).

As *Allen* states, none of Sanders' complaints "call for individual rebuttal." *Allen*, 211 F.3d at 975. In any event, because the affiant was personally known to the detective who swore the affidavit, and his reliability was established, and the information alleged was of direct personal criminal activity, police corroboration was not required. *See id.* at 976. Although the affidavit here, like the affidavit in *Weaver*, did not indicate the amount of drugs observed, unlike the *Weaver* affidavit, it did contain probable cause to suspect drug trafficking. The affidavit expressly indicated that the confidential informant had seen Sanders selling drugs to other individuals. *Cf. Allen*, 211 F.3d at 974 (explaining that "what was lacking in the *Weaver* affidavit was any indication of probable cause to suspect drug trafficking, the offense for which the warrant was expressly being sought"). Nor is the affidavit's failure to verify the confidential informant's knowledge of crack cocaine critical since his past experience in the drug trade was obvious. *See id.* at 975.

The fact that the affidavit lacked certain details such as the precise location of the drugs in the house or a description of the neighborhood is not fatal. As the *Allen* court stressed, "[t]he affidavit is judged on

the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added." *Id.* at 975. Finally, *Allen* makes it clear that there is nothing inherently evil about pre-printed forms. *See generally id.*

In sum, the district court did not err in denying Sanders' motion to suppress.

Given this clear outcome under *Allen,* we need not consider whether the good faith exception to the warrant requirement under *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), applies.

AFFIRMED.